# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ANDREW LOGAN,<br><br>Petitioner,<br><br>v.<br><br>JOHN EVANS, Warden,<br><br>Respondent. | No. 04 C 2366<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

On February 1, 1994, following a bench trial in the Circuit Court of Cook County before Judge Michael B. Bolan, a capable and experienced trial judge, petitioner was convicted of two counts of armed robbery and sentenced to concurrent terms of 40 years imprisonment. Petitioner appealed his conviction to the Illinois Appellate Court, First Division. The public defender filed a motion to withdraw as appellate counsel pursuant to *Anders v. California,* 386 U.S. 738 (1967). Petitioner filed his own response claiming that: (1) he did not knowingly waive his right to a jury trial, (2) the State failed to prove him guilty beyond a reasonable doubt, (3) he received ineffective assistance of trial counsel because his attorney did not give him enough information about his case, misadvised him about his right to testify, failed to investigate his alibi defense, failed to investigate his mistaken identity defense, and did not adequately investigate the case, and (4) the trial court erred in allowing the introduction of other-crimes evidence. On September 29, 1995, the appellate court affirmed petitioner's conviction and sentence. Petitioner petitioned *pro se* for leave to appeal to the Illinois Supreme Court raising the same claims he raised on direct appeal. On January 31, 1996, the Illinois Supreme Court denied his petition.

On May 30, 1996, petitioner filed a *pro se* post-conviction petition pursuant to 725 ILCS 5/122-1 *et seq.* It was originally dismissed as frivolous and patently without merit but was re-docketed after the State confessed on appeal that the dismissal was improper because it occurred more than 90 days after the petition had been filed. On May 4, 2000, petitioner, then represented by counsel, filed a supplemental post-conviction petition, arguing that (1) his trial counsel was ineffective for failing to present his mistaken identification and alibi defenses, prepare a defense witness and refresh her memory, and adversarily test the State's case, (2) the cumulative effect of trial counsel's errors denied him due process and a fair trial, and (3) he received ineffective assistance of appellate counsel because she filed an *Anders* brief to withdraw and failed to raise the above-cited reasons for ineffective assistance of trial counsel.

On February 7, 2001, petitioner's counsel filed an amended supplemental post-conviction petition with two additional claims, that trial counsel was ineffective for failing to investigate and present evidence that another person was in control of the cars the petitioner was convicted of stealing and that his sentence was entered in violation of *Apprendi v. New Jersey,* 530 U.S. 466 (2000). Petitioner also attached an affidavit from his attorney stating that she had issued subpoenas to the Chicago Housing Authority ("CHA") in order to obtain sign-in sheets which could support petitioner's alibi. On August 20, 2001, the trial court denied post-conviction relief as to the issues of ineffective assistance of appellate counsel and *Apprendi* and granted an evidentiary hearing as to the ineffective assistance of trial counsel. After an evidentiary hearing, the court entered an order denying post-conviction relief.

Petitioner appealed the decision arguing only that his sentence was entered in violation of *Apprendi*. On July 3, 2003, the appellate court found that *Apprendi* did not apply retroactively to

2

post-conviction cases, like petitioner's, where the direct appeal process was concluded by the time it was decided, and affirmed the trial court's decision. Petitioner filed for leave to appeal to the Illinois Supreme Court. On December 3, 2003, the Illinois Supreme Court denied his petition for leave to appeal.

On March 31, 2004, petitioner filed the instant petition for writ of habeas corpus in which he raised the following issue: (1) his sentence was entered in violation of *Apprendi,* (2) appellate counsel was ineffective for not arguing that trial counsel was ineffective for failing to move for dismissal of the indictment and failing to impeach identification witnesses, and (3) trial counsel was ineffective for failing to investigate and develop petitioner's mistaken alibi and mistaken identification defenses. I will deal with each of petitioner's claims individually.

First, petitioner claims that his sentence was entered in violation of *Apprendi*. Petitioner's direct appeal was final on January 31, 1996, long before *Appredi* was decided. Since *Apprendi* does not apply retroactively, it cannot be considered here. *See Garrott v. United States,* 238 F.3d 903, 906 (7th Cir. 2001); *Talbott v. Indiana,* 226 F.3d 866, 868-69 (7th Cir. 2000).

Second, petitioner claims that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective. The State argues that petitioner is procedurally barred from bringing claims concerning ineffectiveness of his appellate counsel. A federal court cannot address the merits of constitutional claims brought in a petition for habeas corpus relief unless the state courts have had a full and fair opportunity to review them. *Farrell v. Lane,* 939 F.2d 409, 410 (7th Cir. 1991). Before considering the merits of a petition for habeas corpus, a district court is required to determine whether the petitioner has exhausted all state court remedies and

3

whether the petitioner raised all his claims during the course of the state court proceedings. *Id.* at 410 (citation omitted). If the district court determines that a petitioner has failed to satisfy either of the above requirements, the petition is barred for failure to exhaust state remedies or for procedural default. *Id.*

Because petitioner has exhausted his state court remedies, I move directly to whether his ineffective appellate counsel claims are barred by procedural default. Procedural default commonly occurs in one of two ways: (1) when a petitioner fails to raise an issue through one complete round of either direct appeal or post-conviction review, *Rodriguez v. Peters,* 63 F.3d 546, 555 (7th Cir. 1995), or (2) when the state court rests its judgment on an independent forfeiture under state law. *Patrasso v. Nelson,* 121 F.3d 297, 301 (7th Cir. 1997). The failure to present a claim at the time, and in the way, required by the state constitutes an "independent and adequate state ground" on which a federal court may rely in refusing to address claims raised in a habeas corpus proceeding. *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

Under either of these circumstances, federal habeas review is available only if the petitioner meets the very stringent standard of showing both causes for the failure to comply with the state procedural requirement and prejudice therefrom. *Engle v. Isaac,* 456 U.S. 107, 129 (1982). Alternatively, a habeas petitioner can bypass the requirement of establishing cause and prejudice if he can demonstrate a "fundamental miscarriage of justice," i.e. that a constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Dretke v. Haley,* 541 US 386, 394-98 (2004).

Petitioner's claim that his appellate counsel failed to argue that his trial counsel was ineffective for not seeking to dismiss the indictment was not brought before the state court in

4

either his direct appeals or his post-conviction proceedings. A claim that is raised for the first time at the federal level is not reviewable by the federal district court. *Rodriguez,* 63 F.3d at 555. Accordingly, this claim is procedurally defaulted.

Petitioner's claim that his appellate counsel failed to argue that his trial counsel was ineffective for not impeaching the witnesses' identification testimony is procedurally barred because it was not raised in petitioner's direct appeal or in his petition for leave to appeal following his direct appeal. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Even if this claim could only be made based on evidence outside the record, it was also procedurally defaulted because, petitioner failed to raise it on appeal from the denial of post-conviction relief. Since he was required by Illinois law to pursue his post-conviction and appellate remedies, he is now barred from bringing those claims. *See Farrell,* 939 F.2d at 409; *Jenkins v. Gramley,* 8 F.3d 505, 508 (7th Cir. 1993).

Because petitioner has procedurally defaulted on his claims concerning ineffective assistance of appellate counsel, I can reach the merits only if petitioner can demonstrate cause and actual prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Petitioner does not attempt to establish cause or prejudice in his petition. Nor does he attempt to establish a "fundamental miscarriage of justice" that would permit him to sidestep the cause and prejudice requirement. Thus, I find that these claims are barred from habeas review.

Finally, petitioner argues that his trial counsel was ineffective for failing to investigate and develop his alibi and mistaken identity defenses. Petitioner has preserved these claims by raising them throughout his direct appeal. To establish an ineffective assistance of counsel claim, a defendant must show that his counsel's representation fell below an objective standard

5

of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 694 (1984). The defendant must overcome a strong presumption that counsel's conduct was reasonable and that any challenged action could be considered prudent trial strategy. *Id.* at 689. If an ineffectiveness claim can be disposed of on the grounds that the defendant did not suffer sufficient prejudice, a court need not consider whether the counsel's performance was deficient. *Id.* at 697.

Petitioner claims that his trial counsel's performance was deficient because she failed to develop his mistaken identity defense. Petitioner argues that the physical descriptions given by the car-jacking victims, Russell Fedraza and Mena Swanson, were inconsistent with his actual appearance and should have been used to discredit their line-up and in-court identifications. Fedraza described the perpetrator as a 5'10", 190 pound, black male, and Swanson described the perpetrator as a 5'8", 160 pound, black male. This, petitioner argues, should have been used to discredit their identifications because his actual height and weight were 5'9" and 270 pounds.

However, even if petitioner's trial counsel had completely discredited the witnesses' identifications, it cannot be shown to change the probable outcome of this case. Aside from the identification, there was other significant evidence linking petitioner to the stolen cars. Sergeant William Davis testified that at 2:00 p.m. on May 13th, he was buying stolen cars as part of an undercover investigation. (Pet'r App. A at 3). According to Davis, petitioner drove into the lot in a 1993 maroon Chevrolet Lumina, Swanson's car, followed by another man driving a blue Ford Tempo with license plate number 415 779, Fedraza's car. *Id.* Additionally, Swanson testified after petitioner took her wallet and car keys, he returned to the car he had been driving--

6

a blue Ford Tempo with license plate number 415 779, which matches the description of Fedraza's car. *Id.* Moreover, Fedraza testified that after the car was returned to him, he found items that did not belong to him in the glove department. *Id.* It was later established that those items belonged to Swanson. *Id.* This evidence alone, without the questioned eyewitness identification, would be more than enough to support the trial judge's verdict.

Petitioner also claims that his trial counsel's performance was deficient because she failed to develop his alibi defense. Petitioner claims to have been visiting Wanda Canada when the robberies were committed in the late evening hours of May 12th and the early morning hours of May 13th. Wanda Canada testified at trial that petitioner had stayed one night at her apartment around the time of the robberies but could not remember exactly which day. At the time, Canada lived in a CHA building that required visitors to sign-in and out. Petitioner claims that his trial counsel's efforts were deficient because she did not obtain the relevant sign-in sheets or interview the CHA personnel in order to bolster his alibi defense. But, that is arguing.

Petitioner's trial counsel did make significant efforts to obtain the sign-in sheets. She issued a subpoena, attempted to issue a rule to show cause, and spoke with a CHA representative, who informed her that the CHA could not find the sign-in sheet for May 12th. Thus, it appears that trial counsel did the best she could with respect to the May 12th sign-in sheet and was not deficient in her efforts.

Trial counsel did obtain the sign-in sheets for May 11th and May 13th. The May 11th sign-in sheet did contain petitioner's name. Because Canada testified petitioner only stayed over at her apartment one night during the relevant period, the possibility petitioner signed in again on May 12th is inconsistent with that testimony. Additionally, the CHA security firm responsible

7

for overseeing the sign-in procedures was ultimately fired because they did not make visitors sign-out. Thus, even if petitioner had signed in on May 12th, it would not have eliminated the possibility that he left later that evening, and therefore, is not likely to have changed the outcome of the petitioner's trial.

Petitioner also claims that his trial counsel was deficient for not calling the security guards on duty that night to testify. However, it is unclear whether the security guards' testimony would have helped or hurt the petitioner. Trial counsel was presented with evidence and testimony tending to show that petitioner stayed over at Canada's house on May 11th and not May 12th. Moreover, in light of the evidence identifying petitioner as the robber, the court was unlikely to place much weight on the security guard's testimony, even if it was helpful to him, given the large number or people coming in and out of the CHA building. In light of the evidence presented by the State, petitioner has failed to show that he was prejudiced by his trial counsel's alleged deficiencies.

For these reasons, Petitioner's Habeas Petition is DENIED.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: July 1, 2005